2011 WY 70

**Leroy Francis HARRIS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–10–0144.

Supreme Court of Wyoming.

April 22, 2011.

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellate Counsel, and Kirk A. Morgan, Assistant Appellate Counsel, Wyoming Public Defender Program.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Stewart M. Young, Faculty Director, Prosecution Assistance Program; and Jessica Y. Frint, Student Director, Prosecution Assistance Program.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Leroy Francis Harris (Harris), challenges that portion of the district court's Sentence which required him to pay, as a portion of the costs of prosecution, the fees paid by the State to some of the witnesses who testified against him. Harris was charged with aggravated assault and battery, and the victim of that charged crime was Diane Hampton. Harris was acquitted by the jury of that felony count. Harris also faced trial on a second count, a misdemeanor, which was interference with a peace officer, Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2009). As a part of his sentence, Harris was required to pay a portion of the costs of prosecution (witness fees and costs) in the amount of $548.16. Harris contends that he should not have to pay witness fees for witnesses whose testimony was primarily related to the felony count for which he was acquitted, as well as because the State failed to present any evidence to support its claim for the witness fees at issue herein. We will affirm the Judgment but reverse and remand the Sentence with directions that the district court amend the Sentence imposed so as to remove the provision that Harris be required to pay the witness fees at issue in this appeal.

**ISSUE**

[¶ 2] Harris poses his issue this way:

Did the trial court abuse its discretion when it assessed costs of prosecution fees associated with the State's witnesses without an adequate showing by the State?

The State rephrases that somewhat:

Did the district court abuse its discretion by assessing the appropriate costs of prosecution associated with the State's witnesses?

## FACTS AND PROCEEDINGS

[¶ 3] The crimes at issue here occurred during a time when the Hampton family was erecting a fence that separated the parties' abutting land parcels. The district court pronounced sentence at an initial sentencing hearing on April 15, 2010. That hearing was continued on April 20, 2010, and Harris was satisfied with the sentence imposed except for the witness fees portion of it—and he vehemently objected to that both in his own words and through his defense counsel. The only indication of what the witness fees were in the case came before the court in the form of argument by the prosecutor in favor of a maximum sentence, as well as for witness fees and other usual sentence provisions. The only provision of the sentence in contest here is the witness fees, although that was not the case at the sentencing hearings. This is all there is in the record about witness fees:

> [Prosecutor]: Additionally, your Honor I would place on the record that the county attorney's office paid out the following witness and mileage and meal fees: Cody McGuffin, $564.15. Mr. McGuffin did not testify at trial. He was brought here. He was kept here until we decided that we did not need him any longer. Steve Hampton, $150.48. He did testify, and I believe he testified in matters relevant to the conviction in this case.
>
> Wonita Diane Hampton [victim in the aggravated assault case], $90. I believe she did testify in matters relevant to the conviction in this case. We paid Shane Hampton $51. I have no recollection if he testified regarding interference or not. Debra Larsen, we paid her $103.68 in witness fees and mileage. She did testify of matters relevant to the conviction.

> We paid Victor Arriaza $51. He did testify. We paid Chance Hampton $153.00. He did not testify. The total amount was $1,163.31, and we'd ask that the Court impose some or all of those costs against the defendant.

[¶ 4] The district court specifically did not allow the witness fees for witnesses Arriaza and McGuffin, but did allow all other witness fees to be taxed against Harris. For purposes of clarity and context, we note that it was accepted at the trial that a defendant could not be taxed with costs for witnesses who testified only about a crime of which the defendant was not convicted. It was also accepted that a witness need not necessarily testify for such costs to be taxed, as long as there is some showing the witness was called for a proper purpose. It was also accepted that such costs could be taxed if the witness's testimony was at least in part related to a crime for which a defendant was convicted. None of those generally accepted principles are at issue here. However, in any event, the district court retains the discretion to allow or disallow such costs depending on all the facts and circumstances of the case. Steve Hampton, Diane Hampton, and Debra Larson each testified a little bit about the interference count. Shane Hampton did not testify about the interference count, and Chance Hampton did not testify at all. The root of Harris' objection to paying these costs is that all of the witnesses who were allowed fees were on the Hamptons' side of the fence, which was the issue between the Hamptons and Harris. The Hamptons' testimony concerning the misdemeanor charge was only incidental to that charge. The crux of their testimony went to the aggravated assault charge. The detailed evidence concerning the interference charge was given by the police officer who was the subject of Harris' interference.

## DISCUSSION

[¶ 5] Perhaps the source of some of the difficulties in this case can be traced to our statutes which govern this subject. They are something of a hodgepodge and, secondarily, these sorts of matters have come up

only seldom in our cases over the years. Moreover, to the extent there is pertinent case law and treatise law in point, that law has evolved over the years so that the readily available precedents are not dispositive of the circumstances that are before us in this case.

[¶ 6] In pertinent part W.R.Cr.P. 17(c)(1) provides:

(c) *Allowable fees and expenses.—*

(1) Non-expert Fees.—In addition to actual costs of travel, meals and lodging each non-expert witness shall be paid a witness fee of $30.00 for each full day and $15.00 for each half day necessarily spent traveling to and from the proceeding and in attendance at the proceeding.[1]

[¶ 7] Wyo. Stat. Ann. § 7–11–505 (Lexis-Nexis 2009) provides:

**§ 7–11–505. Payment of costs of prosecution.**

Payment of the costs of prosecution may be added to and made a part of the sentence in any felony or misdemeanor case if the court determines that the defendant has an ability to pay or that a reasonable probability exists that the defendant will have an ability to pay.

[¶ 8] In *Bruckner v. State*, 972 P.2d 141, 142–43 (Wyo.1999) we held:

Bruckner contends that the trial court abused its discretion when it ordered him to pay the costs of litigation. The state counters that the costs which were imposed by the trial court are authorized under Wyoming law.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Raymond v. Raymond*, 956 P.2d 329, 331 (Wyo.1998). In determining whether the trial court abused its discretion, we must decide the ultimate issue of whether or not the court could have reasonably concluded as it did. *Id.*

The prosecutor filed an itemized statement of costs with the trial court on the day of the sentencing, listing airfare for a witness from Dallas, Texas, and airfare for a witness from Kansas City, Missouri. He also listed mileage for a witness from Worland. In addition, he included the costs of lodging and meals for these witnesses.

Costs of prosecution are allowed under Wyo. Stat. Ann. § 7–11–505 (Michie 1997):

Payment of the costs of prosecution may be added to and made a part of the sentence in any felony or misdemeanor case if the court determines that the defendant has an ability to pay or that a reasonable probability exists that the defendant will have an ability to pay.

The trial court found that Bruckner had an ability to pay, and Bruckner does not argue otherwise. Instead, he argues that the trial court abused its discretion by ordering him to pay for the witnesses' meals and lodging and by ordering him to pay the witnesses' travel costs which were in excess of the amount that would have been permitted if the statutory mileage rate specified under Rule 501(b)(1) of the Uniform Rules for District Courts of the State of Wyoming had been used.

Bruckner relies on *Kaess v. State*, 748 P.2d 698 (Wyo.1987), for his proposition that travel costs must be awarded on a "mileage basis or actual costs of airline ticket, whichever is less." 748 P.2d at 703. After comparing the amount which would have been permitted had the travel expenses been determined on the basis of mileage rates to the costs of the airline tickets, Bruckner contends that the cost would have been less if the mileage rate had been used and that, under *Kaess*, the costs of litigation award should be reduced to reflect the difference. Bruckner also asserts that, under *Kaess*, the motel rooms and meals for the witnesses should not have been included in the costs of litigation.

Bruckner's reliance on *Kaess* is outdated. That case was decided before W.R.Cr.P. 17 was amended in 1993. Because Bruckner was convicted in May of

---

**1.** We note that the allowable fees and expenses for witnesses were set in 1993 and have not been reconsidered since.

1996, W.R.Cr.P. 17(c)(1) governed the amount which was allowed for the witnesses' travel expenses in his case. W.R.Cr.P. 17(c)(1) provides:

(c) Allowable fees and expenses.

(1) Non-expert Fees.—In addition to actual costs of travel, meals and lodging each non-expert witness shall be paid a witness fee of $30.00 for each full day and $15.00 for each half day necessarily spent traveling to and from the proceeding and in attendance at the proceeding.

The trial court properly ordered Bruckner to pay the witnesses' actual travel costs and for their meals and lodging.

Additionally, Rule 501(b)(1) of the Uniform Rules for District Courts dictates the amount of compensation which is to be paid to each witness. It also establishes a mileage rate of twenty-three cents per mile, not to exceed the costs of common carrier transportation rates. Contrary to Bruckner's argument, this rule is not adverse to what the trial court did.

We hold that the trial court did not abuse its discretion when it imposed the costs of litigation and that this imposition was supported by Wyoming law.

[¶ 9] Uniform Rules for District Courts of the State of Wyoming, Rule 501(b) provides:

(b) *Criminal Cases.*—

(1) Allowable Costs.

(A) Non-expert witness fees as set forth in Rule 17(c)(1), W.R.Cr.P., are allowed: $30.00 for each full day and $15.00 for each half day necessarily spent traveling to and from the proceeding and in attendance at the proceeding. Mileage is allowed as provided in Rule 501(a)(3)(B)(i), U.R.D.C.

(B) Expert witness fees are allowed as set forth in W.S. § 1–14–102(b).

(C) The general standards as applicable to costs in civil cases will be applied, including witness fees, service fees, and fees for depositions when actually used.

(2) Assessment of Costs Upon Defendant.—Payment of the costs of prosecution may be added to and made a part of the sentence in any felony case if the court determines that the defendant has an ability to pay or that a reasonable probability exists that the defendant will have an ability to pay.

[¶ 10] In *Juarez v. State,* 791 P.2d 287, 289 (Wyo.1990) we held:

**Assessing the Costs of Prosecution**

Juarez claims that the trial court erred in requiring him to repay the costs of the prosecution. We agree. During the sentencing hearing, the prosecution offered no evidence to establish the costs of prosecution, and the trial court's oral imposition of judgment and sentence did not include these particular costs to be repaid by Juarez. When the costs appeared in the written judgment and sentence five days after the sentencing hearing, they appeared as a lump sum with no identification or itemization of specific costs. On review, we have no way of knowing what particular costs are being imposed and whether the lump sum includes improper institutional costs. *Kaess v. State,* 748 P.2d 698, 702–03 (Wyo. 1987). We find that the trial court erred in the manner in which it imposed costs of the prosecution as part of Juarez's sentence, and we strike those costs from the judgment and sentence without remand. *Keller v. State,* 771 P.2d at 387.

Also see *Bi–Rite Package, Inc. v. Ninth Jud. Dist. Court,* 735 P.2d 709, 712 (Wyo.1987) (costs were not supported by evidence of reasonableness or by any evidence at all); and *State v. Dieringer,* 708 P.2d 1, 12–13 (Wyo.1985).

[¶ 11] We resolve this case based upon the above-cited authority. We conclude that the prosecution failed to introduce evidence of any sort that could serve to sustain the district court's imposition of the witness fees and costs on Harris. Although this is dispositive of this case, we will briefly comment on the other issues Harris raised because some additional guidance in this area of the law appears to be worthy of mention.

[¶ 12] The first matter is Harris' contention that the district court could not have awarded members of the Hampton family witness fees because the jury acquitted Harris of the crime he was alleged to have committed wherein Diane Hampton was the victim. The district court rested its decision,

in part, on the circumstance that some small part of some of the testimony for which witness fees were awarded was relevant to the misdemeanor conviction. We take note that all of the witnesses who received witness fees were the subjects of Harris' allegedly assaultive conduct, but he was charged with only one count of aggravated assault and battery. Because the Hamptons anticipated problems with Harris as they constructed a fence that was being put in a "disputed area" where their properties abutted one another, all of them were armed with one sort of firearm or another. Ms. Larson, who was helping the Hamptons with the fence work, was there mainly to film what took place, in case Harris did become a problem. Both still and video photography collected by the Hampton group was introduced as evidence in support of the felony charge for which Harris was acquitted. However, all but Shane Hampton offered only minor corroborative evidence of the resisting arrest misdemeanor. The gravamen of that crime was supported principally by the police officer who was the subject of Harris' resistance (and in some respects entirely so because much of it took place where the Hampton group could not see it at all or at least not clearly). Our jurisprudence is consonant with that of most jurisdictions in that witness fees may not be imposed "in any case in which the defendant is acquitted." *State v. Faulkner*, 75 Wyo. 104, 292 P.2d 1045, 1051 (1956). However, witness fees and costs could have been taxed to Harris for the misdemeanor conviction, but we are hesitant to intimate that the entirety of those costs could be assessed even though there was an acquittal on the primary offense. As with all aspects of sentencing, the district court is accorded wide discretion and assessment of 100% of the witness fees for the misdemeanor conviction, given the circumstances of this case, appears to exceed that discretion. Finally, we note that one witness gave no testimony regarding the misdemeanor and one witness gave no testimony at all. The prevailing law suggests that witness fees may be taxed to a party even though the witness(es) did not testify if "the witness was ready to testify but extrinsic circumstances rendered his or her testimony unnecessary." 20 Am. Jur.2d *Costs* § 48 (Witnesses subpoenaed but not called to testify) (2005). There is nothing in the record on appeal that could serve to verify that there were such qualifying circumstances in this case.

## CONCLUSION

[¶ 13] The Judgment of the district court is affirmed. The Sentence is also affirmed, with the exception of that portion of paragraph 6 of the Judgment and Sentence which ordered Harris to pay costs of prosecution in the amount of $548.16. This matter is remanded to the district court for such proceedings as are necessary to accomplish that result.